**JAMES JULIAN, INC., Plaintiff,**

v.

**RAYTHEON COMPANY, Raytheon Service Company, Dean E. Bensley, Building and Construction Trades Council of Delaware, Frank DiMauro, Operating Engineers Local 542, Albert W. Spanich, Iron Workers No. 451, Edward F. Peterson, Metropolitan District Council of Philadelphia and Vicinity, United Brotherhood of Carpenters and Joiners of America, and Wharf and Dock Builders and Pile Drivers Local Union No. 454 of the United Brotherhood of Carpenters and Joiners of America, Defendants.**

Civ. A. No. 80–30.

United States District Court,
D. Delaware.

Jan. 20, 1982.

John Van Brunt, Jr., Wilmington, Del., John W. Pelino, Edward J. O'Malley, and Howard A. Rosenthal, Pelino & Lentz, P.C., of counsel, Philadelphia, Pa., for plaintiff.

Edmund N. Carpenter, II, Richard G. Elliott, Jr., and Stephen E. Herrmann, Richards, Layton & Finger, Wilmington, Del.,

for defendants Raytheon Co., Raytheon Service Co. and Dean E. Bensley.

Joseph W. Benson, Brandt & Benson, Wilmington, Del., Richard B. Sigmond, Meranze, Katz, Spear & Wilderman, of counsel, Philadelphia, Pa., for defendants Building Trades Council of Delaware and Frank DiMauro.

Robert B. Coonin, Knecht, Greenstein, Schagrin & Berkowitz, Wilmington, Del., Jack J. Bernstein, Adler, Barrish, Daniels, Levin & Creskoff, of counsel, Philadelphia, Pa., for defendants Operating Engineers Local 542 and Albert W. Spanich.

Harvey B. Rubenstein, Wilmington, Del., for defendants Iron Workers Local 451 and Edward F. Peterson.

Clifford B. Hearn, Balick & Hearn, P.A., Wilmington, Del., Thomas W. Jennings, of counsel, Philadelphia, Pa., for defendants Metropolitan District Council of Philadelphia and Vicinity and Wharf & Dock Builders Local 454.

## OPINION

MURRAY M. SCHWARTZ, District Judge.

In this action, plaintiff James Julian, Inc. ("Julian") seeks injunctive relief and damages against several labor organizations, individual union officers, Raytheon Company, and Raytheon Service Company ("RSC") under sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. §§ 1, 2, section 303 of the Labor Management Relations Act, 29 U.S.C. § 187, and state tort law. The parties are currently engaged in discovery. Presently before the Court are defendants Raytheon Company and RSC's ("the Raytheon defendants") motions to compel the return of certain allegedly privileged documents and to compel production of materials reviewed by certain of plaintiff's witnesses prior to their oral depositions. Each of the Raytheon defendants' motions will be addressed in turn.

### Return of Documents

During the course of document discovery the Raytheon defendants produced certain documents now claimed to be privileged. The documents in question were produced pursuant to a court-approved protective order which provided that production would not constitute a waiver of any privilege which might apply to such documents.[1] Plaintiff does not contend that the Raytheon defendants waived any privilege by producing the documents in question. Rather, Julian argues that the documents neither were treated as confidential or privileged prior to production nor prepared in anticipation of litigation and were therefore not privileged in the first instance.

The first document, Exhibit P–5, is a memorandum prepared by R. C. Austin, general counsel for defendant RSC, dated September 26, 1978, to which a memorandum prepared by R. J. D'Avignon, assistant general counsel for defendant RSC, is attached. Both memoranda express legal opinions as to the obligations arising out of a letter agreement between RSC and Julian. The second document, Exhibit P–39, is a memorandum of a telephone conversation involving Mr. Philbrick, a former subcontracts manager for RSC, Mr. Robbins, a construction consultant for RSC, and Mr. D'Avignon, assistant general counsel to RSC. The memorandum reflects that the parties discussed the possibility of litigation with Julian and that Mr. D'Avignon rendered legal advice on that subject.

---

1. The order approved May 21, 1980, provides in part:

> 9. Protected Documents and the information contained therein or derived therefrom may be used at any hearing in this case, subject to any further Protective Order which this Court might, for good cause, then enter, and provided that any use or filing of the Protected Documents shall not constitute a waiver by the using or filing party of any attorney-client privilege, work product privilege, confidentiality or other applicable privilege. By making available any such protected documents, or information contained therein or derived therefrom, the parties will not have waived, and do not waive, the right to assert any such privilege or to object to the admissibility of any such Protected Documents into evidence in any other hearing or proceeding in this litigation.

■ Defendants contend that the memoranda are protected by both the attorney-client and attorney work product privileges. At the outset it must be recognized that the two privileges, though related, are distinct. Any discussion of attorney-client privilege must begin with the Supreme Court's recent decision in *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). In *Upjohn* the Supreme Court rejected the so-called "control group test" for use in cases involving corporate claims of attorney-client privilege. Recognizing that the privilege is intended to promote full and open communication between attorney and client by protecting confidential communications, the Court held that its availability must be left for case-by-case determination. On the facts presented, the Court held that communications by employees to corporate counsel, acting as such, at the direction of corporate superiors in order to secure legal advice were privileged. 449 U.S. at 394–95, 101 S.Ct. at 685.

Plaintiff does not seriously contest that the individuals involved in the preparation of the two documents were employees of a corporation (RSC). Although there was some claim that the attorneys involved were acting as business rather than legal advisors, the Court has inspected the memoranda and finds that on the occasions reflected in those documents both Mr. Hensleigh and Mr. D'Avignon were consulted in their legal capacities. *See Hercules, Inc. v. Exxon Corp.*, 434 F.Supp. 136 (D.Del.1977); *Zenith Radio Corp. v. Radio Corp. of America*, 121 F.Supp. 792 (D.Del.1954).

■ Somewhat more troubling is plaintiff's argument that the Raytheon defendants have failed to establish that the memoranda were afforded the required confidentiality both at the time of their composition and since then. It is well established that the attorney-client privilege is limited to communications intended to be confidential. Indeed, the highly confidential treatment of the communications involved was a key factor in *Upjohn*, where the Court stressed that they were "considered 'highly confidential' when made . . . and have been kept confidential by the company." 449 U.S. at 395, 101 S.Ct. at 685. The presence of nonessential third parties not needed for the transmittal of the information will negate the privilege. *Pitney-Bowes, Inc. v. Mestre*, 86 F.R.D. 444, 446 (S.D.Fla.1980).

■ The requirement of confidentiality at the time of composition presents little difficulty in this case. As noted, P–39, the telephone memorandum, reflects a conversation involving Mr. D'Avignon, assistant general counsel for RSC, Mr. Robbins and Mr. Philbrick. Having reviewed the memorandum, the Court finds that both Mr. Robbins and Mr. Philbrick were essential participants in that conversation. P–5, the Hensleigh memorandum with attachment, was circulated to seven individuals: Mr. Bensley, president of RSC; Mr. Austin, RSC contracts manager; Mr. Storella, RSC contracts administrator; Dr. Spencer, Delaware Reclamation Project Program Manager; [2] Mr. Schroeder, resource recovery manager; and Mr. Philbrick, former RSC subcontracts manager. Raytheon Defendants' Reply Brief at 6. Although distribution to as few as thirteen persons has been held to negate the privilege, *Pitney Bowes, Inc. v. Mestre*, 86 F.R.D. at 448, the Court finds, based on its review of the document in question, that on the facts of this case the distribution was both reasonable and necessary; the status of each of the seven named individuals was such that it was essential that they know the contents of the memorandum. *See Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (circulation of questionnaire to "All Foreign General and Area Managers" did not destroy confidentiality).

A more difficult issue is raised by the subsequent handling of the two memoranda. P–5, the Hensleigh memorandum, as well as the attached D'Avignon memoran-

---

**2.** The Delaware Reclamation Project is the construction project out of which this litigation arose.

dum, is stamped "company private," yet both documents, along with P–39, the telephone memorandum, were indexed and filed in the general program file. Virtually anyone working on the Delaware Reclamation Project could have reviewed the documents. Plaintiff argues that by placing them in the general file the Raytheon defendants, in effect, published the documents waiving any privilege to which they might previously have been entitled. The Raytheon defendants argue that the project files were open only to corporate employees and that distribution within the corporation does not constitute a waiver. They further assert that the placement of such documents in the project file where they can be reviewed by project personnel who need to know their content is essential to the corporation's efficient operation. It would be impossible, or at least difficult, they argue, to conduct day-to-day business if they were forced to pull essential project documents out of their logical file sequence to place them in special, locked, confidential files.

Although it is well established that publication of privileged documents can constitute waiver, *Coastal States Gas Corp. v. Department of Energy*, 644 F.2d 969 (3d Cir. 1981); *Byrnes v. IDS Realty Trust*, 85 F.R.D. 679 (S.D.N.Y.1980) (applying Eighth Circuit law), there is little authority on the precise issue presented. In *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854 (D.C.Cir.1980), the Department of Energy ("DOE") opposed disclosure of certain documents under the Freedom of Information Act, claiming that they were within the scope of exemption 5, because they would have been protected by the attorney-client privilege had DOE been a private party. The court rejected the claim of privilege, in part, because DOE could not demonstrate that it had treated the documents in a confidential manner. Noting that the record contained no evidence of any attempt to protect the confidentiality of the document, which had in fact, at least in some regions, been "circulated to all area offices, filed and indexed for future use, relied on as precedent and used as training materials for new personnel," 617 F.2d at

863 (footnotes omitted), the court held that there was no basis on which to conclude they were confidential.

Plaintiff argues that the rationale of *Coastal* requires a holding that there is no privilege in this case. The Court cannot agree. The documents in question were not broadly circulated or used as training materials; they were simply indexed and placed in the appropriate file where they would be available to those corporate employees who needed them. As the court noted in *Coastal* itself, it is only when facts have been made known to persons other than those who need to know them that confidentiality is destroyed. 617 F.2d at 863. Further, to the extent that *Coastal* can be read to suggest a stricter rule limiting intra-corporate circulation, it should be noted that the *Coastal* court, writing prior to the Supreme Court's decision in *Upjohn Co. v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), relied, in part, on the now-discarded control group test.

It is of course true that the placement of the documents in the general program file made it more likely that some corporate personnel other than those who "needed to know" would discover their contents. But the fact that some unauthorized corporate personnel may purposely or inadvertently read a privileged document does not render that document nonconfidential. To hold otherwise would be to require every corporation to maintain at least two sets of files. Moreover, a screening committee would then have to be set up whereby some designated official could pass on the need of each employee to know the contents of any requested document. Such a system is neither practical nor in the Court's opinion required by the case law.

*Attorney Work Product*

■ Even if the documents in question were not subject to the attorney-client privilege, they would still be protected from disclosure by the attorney work product doctrine. In contrast to the attorney-client privilege, the work product doctrine provides an attorney with a "zone of privacy"

within which to think, plan, weigh facts and legal theories, and prepare a case. *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 864 (D.C.Cir.1980); *Hercules, Inc. v. Exxon Corp.,* 434 F.Supp. 136 (D.Del. 1977). As codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, the doctrine protects:

> documents and tangible things ... prepared in anticipation of litigation or for trial by or for [a] party or by or for [a] party's ... attorney ....[3]

■ The rule was not intended "to protect all recorded opinions, observations and impressions of an attorney made in connection with any legal problem, but to protect the integrity of the adversary process." *Hercules, Inc. v. Exxon Corp.,* 434 F.Supp. at 150–51. For that reason the doctrine's protection has always been limited to materials prepared or collected by an attorney in preparation for litigation. *See Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

■ Plaintiff argues that the memoranda were prepared before there was even a hint of litigation and that the doctrine is therefore inapplicable. The mere fact that a document is prepared before litigation actually commences does not preclude a finding that it constitutes work product. On the other hand, litigation must at least be a real possibility at the time of preparation or, in other words, the document must be prepared with an eye to some specific litigation. In *In re Grand Jury Investigation,* 599 F.2d 1224, 1229 (3d Cir. 1979), the Court of Appeals for the Third Circuit reviewed a variety of formulas for determining "the necessary nexus between the creation of the material and the prospect of litigation," and concluded that on the facts of that case any of the proposed tests would have been satisfied. In *Grand Jury* the corporation, suspecting the existence of undisclosed, illegal foreign payments, retained outside counsel to investigate. In reviewing the district court's quashing of a grand jury subpoena directed to the materials prepared in the course of that investigation, the court held that the fact that there was no suit pending at the time of the investigation did not negate the claim of privilege. If the investigation confirmed the corporation's suspicions, some litigation was almost inevitable. The fact that the corporation could not know who would sue based on what theory did not matter. The prospect of litigation was sufficiently strong to bring the materials within the doctrine. 559 F.2d at 1229.

■ The memoranda at issue here present an even stronger case for protection. They contain the opinions of counsel with regard to the prospect of the present litigation. Plaintiff was clearly identified

---

**3.** The full text of Rule 26(b)(3) provides:

> Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including his attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

> A party may obtain without the required showing a statement concerning the action or its subject matter previously made by that party. Upon request, a person not a party may obtain without the required showing a statement concerning the action or its subject matter previously made by that person. If the request is refused, the person may move for a court order. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion. For purposes of this paragraph, a statement previously made is (A) a written statement signed or otherwise adopted or approved by the person making it, or (B) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

as the potential adversary as were several of the legal and factual points at issue. Having reviewed the documents, the Court finds plaintiff's contention that they were prepared in the absence of "even a 'hint,' suggestion or possibility of a claim of any litigation . . . ," Plaintiff's Answering Brief at 17, to border on the ludicrous.

### Production of Materials Reviewed Prior to Depositions

In the course of preparing witnesses for depositions plaintiff's counsel assembled a binder which was reviewed by current principals, officers and employees of Julian who were being deposed by the Raytheon defendants. The binder, which was not reviewed by the Court, contains: 1) selected documents obtained from RSC through discovery; 2) documents obtained by Julian from the public records of the Delaware Solid Waste Authority through a Freedom of Information Act request; and 3) documents prepared by Julian during the course of the project. Plaintiff's Answering Brief at 6–7.

Julian does not object to defendants' obtaining the documents contained in the binder; indeed, Julian has represented that many of the documents were already turned over during the course of discovery. Plaintiff's Answering Brief at 7. Rather, plaintiff objects to the production of the binder itself, arguing that the selection and ordering of documents constitute privileged work product reflecting counsel's opinions, mental impressions, conclusions or legal theories and is therefore entitled to special protection under Rule 26(b)(3) of the Federal Rules of Civil Procedure. The Raytheon defendants argue first, that production of the binder would not reveal the thought processes of plaintiff's counsel and second, that even if the binder was at one time entitled to special protection, plaintiff waived that entitlement by using the binder to prepare witnesses for deposition.

The threshold issue can be dispensed with quickly. The binder contains a small percentage of the extensive documents reviewed by plaintiff's counsel. In selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case. Indeed, in a case such as this, involving extensive document discovery, the process of selection and distillation is often more critical than pure legal research. There can be no doubt that at least in the first instance the binders were entitled to protection as work product. *See Berkey Photo, Inc. v. Eastman Kodak Co.,* 74 F.R.D. 613 (S.D.N.Y.1977).

Even assuming the binder was once entitled to protection, the Raytheon defendants argue that plaintiff waived that protection. Relying on Rule 612 of the Federal Rules of Evidence, they argue that if a party uses protected documents to prepare a witness for deposition, those documents become discoverable. Rule 612 provides in part:

. . . if a witness uses a writing to refresh his memory for the purpose of testifying either—

(1) while testifying, or

(2) before testifying, if the court in its discretion determines it is necessary in the interests of justice,

an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness . . . .

Its provisions are made applicable to depositions by virtue of Rule 30(c) of the Federal Rules of Civil Procedure. The legislative history and case law both discuss Rule 612 in terms of privilege without clearly distinguishing the attorney work product doctrine. As a result the following analysis will discuss the Rule's effect on protected documents generally before considering the effect, if any, of the fact that in this case plaintiff claims the protection of the work product doctrine.

There is no doubt that Rule 612(2) constituted a major departure from the settled rule that the use of a privileged document to refresh a witness' memory only constituted a waiver of the privilege if it occurred *at* the time of testimony. *See La Chemise*

*Lacoste v. Alligator Company, Inc.*, 60 F.R.D. 164 (D.Del.1973) (stating prior rule). The precise issue presented by the Raytheon defendants' motion is whether in extending the rule to include documents used to refresh a witness' memory before testifying Congress intended to include all such documents or only those not subject to claims of privilege.

The legislative history of Rule 612 is ambiguous. It can be read to indicate a congressional intent to leave the decision as to privileged documents to the sound discretion of the district courts for resolution on a case by case basis. It is also possible to view the record as reflecting an intent to exempt privileged documents from the operation of the expanded rule. *See Berkey Photo, Inc. v. Eastman Kodak Co.*, 74 F.R.D. at 616; J. Weinstein & M. Berger, 3 *Weinstein's Evidence* at 612–2—612–5 (1978).

As noted, prior case law required disclosure of privileged documents used to refresh memory at the time of testimony. Plaintiff argues, based largely on legislative history, that Congress intended to limit Rule 612's expansion of prior law to non-privileged documents used to refresh witness' memory prior to testimony. As enacted, Rule 612 does limit the expansion of prior law, not, as plaintiff suggests, by exempting privileged documents, but by conditioning disclosure on the discretionary approval of the district court. It would thus appear that Congress left the task of striking a balance between the competing interests of full disclosure and the maintenance of confidentiality for case by case determination.

Those courts which have considered the issue have generally agreed that the use of protected documents to refresh a witness' memory prior to testifying constitutes a waiver of the protection. In what is perhaps the leading case, *Berkey Photo, Inc. v. Eastman Kodak Co.*, 74 F.R.D. 613 (S.D.N.Y.1977) (Frankel, J.), defendant's attorneys used four notebooks to prepare expert witnesses for deposition. The court noted that:

[Given the] modern views favoring broad access to materials useful for effective cross-examination, embodied in rules like 612 [and the Jencks Act], it is disquieting to posit that a lawyer may "aid" a witness with items of work product and then prevent totally the access that might reveal and counteract the effects of such assistance. There is much to be said for a view that a party or its lawyer, meaning to invoke the privilege, ought to use other, and different materials, available later to a cross-examiner, in the preparation of witnesses. When this simple choice emerges the decision to give the work product to the witness could well be deemed a waiver of the privilege.

74 F.R.D. at 616. The court's actual holding that the notebook which had "the sound and quality of materials appropriate 'to promote the search of credibility and memory,' " 74 F.R.D. at 616, need not be produced was based not on its reading of Rule 612 but on its perception that an order compelling discovery would work undue hardship on defendant, whose counsel were unaware of the scope of the then recently adopted rule. Indeed, the court was at pains to put the bar on notice that in the future a contrary result would obtain.

Judge Frankel's prediction has proved largely accurate. Thus, for example, the court in *Wheeling-Pittsburgh Steel Corp. v. Underwriters Laboratories, Inc.*, 81 F.R.D. 8 (N.D.Ill.1978), held that the use of privileged documents to refresh a witness' recollection prior to testimony served as an effective waiver of the privilege. Plaintiff attempts to distinguish *Wheeling* by arguing that because the witness had left the party's employ by the time of his deposition, his review of the documents destroyed their confidentiality. The *Wheeling* Court did hold that the use of the documents to refresh the witness' recollection constituted a waiver of the attorney-client privilege, but any notion that it was relying on concepts of publication to noncorporate personnel must be dispelled by its reliance on *Bailey v. Meister Brau, Inc.*, 57 F.R.D. 11 (N.D.Ill. 1972), a pre-Rule 612 case. In *Bailey*, privi-

leged documents were used to refresh a witness's recollection at his deposition. In rejecting plaintiff's claim that privileged documents are excepted from the general rule that a party is entitled to inspect any document used to refresh recollection the court held that:

> To adopt such an exception would be to ignore the unfair disadvantage which could be placed upon the cross-examiner by the simple expedient of using only privileged writings to refresh recollection.

57 F.R.D. at 13. The *Bailey* court also considered the applicability of the attorney work product doctrine to the requested documents and concluded that the use of the documents to refresh recollection constituted a waiver of that doctrine for the same reasons that it constituted a waiver of the attorney-client privilege. *Id; accord, Marshall v. United States Postal Service*, 88 F.R.D. 348 (D.D.C.1980) (unsigned affidavit prepared by attorney from interview notes used to refresh recollection at deposition); *Williamson v. Puritan Chemical Corp.*, 80 Civ. 1698 (S.D.N.Y. March 6, 1981) (statement made to counsel and reviewed prior to testifying); *Peck & Peck, Inc. v. Jack La Lanne*, 76 Civ. 4020 (S.D.N.Y. Jan. 12, 1978) (use of privileged investigative report to refresh recollection prior to testimony).

Aside from *Berkey* the only case Court or counsel have discovered in which the court denied production of privileged documents reviewed prior to testimony is *Jos. Schlitz Brewing Co. v. Muller & Phipps (Hawaii) Ltd.*, 85 F.R.D. 118 (W.D.Mos.1980). In *Schlitz* the witness, an attorney, testified that he had reviewed his correspondence file consisting of thirty-nine documents in preparation for his deposition. Although the Court did state that language and history of Rule 612 indicated that the Rule's adoption occasioned "little if any widening of disclosure obligations," 85 F.R.D. at 119, the court's actual holding was simply that "there was insufficient establishment of actual use of any of the various documents [contained in the file], so as to authorize [the invocation of] Rule 612. 85 F.R.D. at 120.

█ Plaintiff attempts to distinguish the above cited cases by asserting that, with the exception of *Bailey*, a pre Rule 612 case, and *Berkey*, which is dismissed as containing mere dicta, none involved a claim of attorney opinion work product, the disclosure of which the court is obligated to protect against. Fed.R.Civ.P. 26(b)(3). Plaintiff's argument is not without merit. Each case must, of course, be evaluated on its own facts. In a given case the fact that the privileged documents contained attorneys' mental impressions might cause the Court to strike the balance in favor of nondisclosure. However, this is not that case. The binder at issue contains various documents selected and arranged by plaintiff's counsel and given to various witnesses prior to their depositions. Without reviewing those binders defendants' counsel cannot know or inquire into the extent to which the witnesses' testimony has been shaded by counsel's presentation of the factual background. The instant request constitutes neither a fishing expedition into plaintiff's files nor an invasion of counsel's "zone of privacy." Plaintiff's counsel made a decision to educate their witnesses by supplying them with the binders, and the Raytheon defendants are entitled to know the content of that education.

Based on the foregoing the Court concludes that the binders are properly within the scope of Rule 612(2) and in the interests of justice should be disclosed. An appropriate order will issue.